CONTINENTAL NAT. BANK v. HEILMAN et al.

(Circuit Court of Appeals, Seventh Circuit. April 4, 1898.)

No. 451.

1. LACHES—LIMITATION OF ACTIONS.
   The proviso in Rev. St. Ind. 1894, § 2597 (Rev. St. 1881, § 2442), permitting suits to be brought against heirs, devisees, and distributees of a decedent within two years after final settlement, by any creditor out of the state, does not prevent a federal court from applying the bar of laches resulting from delay within the statutory time. 81 Fed. 36, affirmed.

SAME — FAILURE TO PRESENT CLAIM AGAINST ESTATE — DEPRECIATION OF COLLATERAL.
   When one who claims to be a creditor of a deceased person neglects for more than three years to present his claim, or to bring suit upon the demand, of which the representatives of the decedent are ignorant, and in that time the collateral securities held for the claim depreciate from more than its amount to much less, and the joint maker of the note has become insolvent, the creditor is guilty of inexcusable laches, which bar him from proceeding in equity against the devisees of the decedent. 81 Fed. 36, affirmed.

Appeal from the Circuit Court of the United States for the District of Indiana.

Addison C. Harris, for appellant.

C. A. De Bruler and Chas. W. Smith, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. The bill in this case was brought against the widow and children of William Heilman, deceased, to charge them, as legatees or devisees, with the amount due upon a promissory note for $100,000 alleged to have been executed by the deceased, jointly with David J. Mackey, to the appellant, the Continental National Bank. Alfred W. Emory was made a party defendant because he holds property left by the deceased as the trustee for the other defendants. Mackey was also made a party, but was let out on his demurrer to the bill. Issue was joined upon voluminous answers, of which no statement is necessary. The equity of the case was found to be with the defendants, on different grounds stated in the opinion of the court (Bank v. Heilman, 81 Fed. 36), and a decree was entered dismissing the bill. Other questions aside, the last ground stated, that under the circumstances the failure to present a claim to the executor for allowance or rejection during the course of the administration of the estate was a bar to a suit in equity, commands our approval. The contention of the appellant is that the right to compel payment by heirs or devisees of a debt of the deceased is in Indiana a purely statutory right, which will be enforced by the federal courts in accordance with the terms of the statute which creates the right, and that by the statute a creditor out of the state for six months before the final settlement of the estate may bring suit within two years after such settlement. Rev. St. 1894, § 2597 (Rev. St. 1881, § 2442). The statute reads:

"The heirs, devisees and distributees of a decedent shall be liable to the extent of the property received by them from such decedent's estate to any creditor whose claim remains unpaid, who six months prior to such final settlement,

was insane, an infant, or out of the state, but such suit must be brought within one year after the disability is removed: provided that such suit upon the claim of any creditor out of the state must be brought within two years after such final settlement."

Whether the supreme court of Indiana has regarded this provision as creative, or simply declarative, of a right which existed in equity, and would be enforced by the courts of the state if there were no such enactment, is not left clear by the court's decisions and dicta touching the point. In Stevens v. Tucker, 87 Ind. 109, where the plaintiffs had not been "insane, an infant, or out of the state," the cause of action had arisen after, and, the possibility of its arising being unknown, it could not have been presented to the administrator before, the settlement of the estate. The court, after reviewing its earlier decisions, said:

"It is plain that their action is not founded upon any statute. * * * But are they, though their claim is thus meritorious, without remedy? * * * It need not be said that it is beyond the power of the legislature to deprive the appellees of all remedy, but it may well be presumed that it was not intended by the legislature, in the enactment of the statutory provisions under discussion, to deprive any one of a well-founded right by forbidding a remedy therefor."

In Fisher v. Tuller, 122 Ind. 31, 23 N. E. 523, the plaintiff had been "out of the state," but the suit was not brought within two years after the final settlement of the debtor's estate; and in disposing of the case the court said:

"The right of the appellant to prosecute an action against the appellee is statutory. * * * We can see no escape from the plain language of this statute. * * * The statute which gives the right contains its own limitations, and we can ingraft no exceptions upon it. * * * If there were a common-law right to hold the heir liable for the debts of an ancestor, there might be some plausibility in appellant's argument, but there is no such common-law right. Woerner, Adm'n, § 574. The appellant must therefore take the statutory right as it is bestowed, for he has no other."

No reference was made to the earlier cases, and it is contended, with at least apparent plausibility, that what was said in respect to the right of action being purely statutory was unnecessary, since, whatever its character, the action was barred because not brought within the two years prescribed by the statute.

In Stults v. Forst, 135 Ind. 297–307, 34 N. E. 1125, is to be found this language:

"We do not say that there may not be cases where equity would interfere in favor of a claim brought after the settlement of an estate, even if the claimant were not authorized by the statute to bring suit against the heirs or devisees."

In the still later case of Bank v. Culbertson (Ind. Sup.) 45 N. E. 657, the right to enforce "the liability of the decedent against his property after his estate is settled" was again said not to exist except by statute; but it is stated in the brief for appellee that the question had not been argued, and in the opinion on a petition for rehearing (47 N. E. 13) the court said that, if in such cases the creditor had a right to sue in equity, "the right of appeal [which seems to have been the sole question in the case] would nevertheless be subject to the provisions of the statute."

In Yoast v. Willis, 9 Ind. 548, the statute under consideration was characterized as a "statute of limitations"; and if that had been con-

stantly recognized as its dominant characteristic, the first clause being regarded simply as a definition of a recognized right, upon the enforcement of which it was proposed by the following clauses to impose limitations, the apparent inconsistencies of expression in the opinions referred to would probably not have occurred.   To say the least, it cannot be doubted, as suggested in Stults v. Forst, supra, that, if there were no statute in Indiana authorizing suits against heirs, the right to relief in equity, in proper cases, would be recognized by the courts of the state.   "The law is well settled in this state," it was said in Rinard v. West, 92 Ind. 359, "that the creditor of a decedent's estate must proceed to enforce his claim against the estate through an executor or administrator, and cannot sue heirs, devisees, and legatees, where there has been no executor or administrator; nor can he maintain a suit against them, where there has been an executor or administrator, without showing a valid excuse for not proceeding against the decedent's estate before its final settlement."   It is true, in a strict sense, that the right to sue the heir of a deceased debtor did not exist at common law; but the right in equity to enforce payment of the debt out of the personal property of the ancestor, which had come into possession of the heir, seems to have been recognized long before devisees were declared liable by the statute of 3 Wm. & M.   Story, Eq. Pl. § 106; 1 Spence, Eq. Jur. 191; Williams v. Gibbes, 17 How. 238, and authorities there cited.   In People v. Brooks, 123 Ill. 246, 14 N. E. 39, to which reference has been made, the action was one of debt, and the discussion necessarily was confined to liability at common law and by the statutes of Illinois.   Whatever may be said of the origin of the jurisdiction in question, it is settled beyond dispute that the national courts of equity possess it, and the principles on which they exercise it have been well defined.   Williams v. Gibbes, supra; Board of Public Works v. Columbia College, 17 Wall. 521; Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342; Chewett v. Moran, 17 Fed. 820; Woerner, Adm'n, p. 1269; Beach, Mod. Eq. Jur. §§ 1039, 1040.   While in this as in other respects the jurisdiction of the federal courts, and the methods and principles upon which it is exercised, are not to be affected by the legislation of a state, the right of a state legislature to fix a time within which relief may be sought has been recognized.   Morgan v. Hamlet, 113 U. S. 449, 5 Sup. Ct. 583.   The provision of the Indiana statute that the suit of a creditor out of the state must be brought within two years after final settlement of the estate would therefore, like any other statute of limitation which allows reasonable time for the bringing of suit, be recognized by all courts as valid; but, like other such statutes, it will not be deemed to give a right to sue within the time limited, regardless of laches or other considerations which would make the suit, when brought, inequitable.   This statute does not say that the suit may be, but that it must be, brought within the time specified; and it would not follow, even if the right to sue depended solely on the statute, that the doctrine of laches should not be applied to defeat a suit which had been needlessly delayed, to the injury of those against whom relief was sought.   That the appellant in this case had been guilty of inexcusable laches, either in not presenting its claim to the executor during the course of administration

of the estate, or in not bringing suit upon the demand in the federal court, as it might have done pending administration, the evidence leaves no question. Besides the very great depreciation of the collaterals which the bank held, exceeding in original value more than the amount of the note, and the changes in their modes of living which the heirs and legatees may be presumed to have adopted in ignorance of so large a demand against the estate,—a consideration of great importance under supposable circumstances,—it is averred in the bill that Mackey, the joint maker of the note, had become totally insolvent, and, the contrary not being shown, the presumption is that the right to compel contribution by him, which but for the delay would have been valuable, had been made worthless. The decree of the circuit court is therefore affirmed.